IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| RICKEY CRITTENDON, #135 565 | * | |
| Plaintiff, | * | |
| v. | * | 2:05-CV-845-WKW |
| | | (WO) |
| MR. DONAL CAMPBELL, COMMISSIONER, *et al.*, | * | |
| | * | |
| Defendants. | | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Rickey Crittendon ["Crittendon"], an Alabama prisoner incarcerated at the Easterling Correctional Facility ["Easterling"], filed this *pro se* 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights with regard to disciplinary proceedings initiated against him in July 2005. Crittendon seeks injunctive relief and damages against the following defendants: Commissioner Donal Campbell,[1] Warden Gwendolyn Mosley, Captain Kenneth Sconyers, and Correctional Officers Ibeth Jones, Stephanie Pryor, and Mitchell Borders.

In accordance with the orders of the court, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the

---

[1] During the pendency of this action Commissioner Richard Allen succeeded Donal Campbell as the Commissioner of the Alabama Department of Corrections.

complaint. The court then informed Crittendon that Defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to Crittendon the proper manner in which to respond to a motion for summary judgment. Crittendon filed a response to the special report filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Crittendon's opposition to this motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

In order to survive Defendants' properly supported motion for summary judgment, Crittendon is required to produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide adequate evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there

is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## II. DISCUSSION

*A. The Disciplinary Claims*

   *i. Due Process*

Crittendon received a disciplinary notice on July 14, 2005 on a charge that he violated Rule #38 - Indecent Exposure/Exhibitionism. Officer Jones issued Crittendon the infraction after observing him in the 8 Dorm laundry room stroking his exposed erect penis in a backward and forward manner while looking at her. After hearing testimony from Officer Jones and Crittendon at a disciplinary hearing held July 16, 2005, the hearing officer, Officer Pryor, found Crittendon guilty of violating Rule #38. Officer Pryor found Crittendon guilty of the conduct charged and concluded that his statement that Officer Jones was lying about the conduct made the basis of the disciplinary was not credible. Officer Pryor sanctioned Crittendon to 45 days of disciplinary segregation. (Doc. No. 10, Exhs. 3, 4.)

Crittendon received another disciplinary notice on July 25, 2005 on a charge that he violated Rule Number 41, Making a False Statement to and Alabama Department of Corrections Employee with Intent to Deceive. Officer Jones issued Crittendon the infraction on the basis that he made a false statement about her in a letter he wrote to Warden Mosley. Both Officer Jones and Crittendon testified at the hearing. At the conclusion of the July 28, 2005 disciplinary hearing, the hearing officer, Mitchell Borders, found that Crittendon did make a false statement about Officer Jones in a letter he wrote to Warden Mosley. Officer Borders determined that Crittendon's letter contained "slanderous, defamatory, or untrue words," and that Crittendon should have known that the information was not true. Officer Borders further found as not credible Crittendon's testimony that the disciplinary was a form of retaliation based on the letter he wrote to Warden Mosley concerning Officer Jones. Officer Borders recommended that Crittendon be assigned to the hot dorm (a restricted privileges dormitory) for 45 days. (Doc. No. 10, Exhs. 1, 3, 5.)

Crittendon complains that Defendants denied him due process with regard to the July 14 disciplinary proceedings because they failed to provide him with 24 hours advance notice of the disciplinary hearing as required by administrative regulations. Crittendon further alleges that the hearing officer at the July 14 proceeding, Officer Pryor, exhibited bias, in her findings because she refused to present the questions he prepared for the hearing, but rather, following the hearing she wrote her own answers to his questions. (Doc. Nos. 1, 2.)

With regard to the July 20, 2005 disciplinary, Crittendon asserts the he was denied due process because Defendants failed to comply with prison regulations when they failed to identify the statements in his letter which Officer Jones alleged to be false which hampered his ability to know the charge he had to defend against. He does not dispute the existence of the letter he wrote to Warden Mosley but claims that it contained several statements including one that pointed out that Officer Jones slanderously accused him of violating Rule Number 38 as a result of a verbal confrontation which occurred between the two of them on July 12, 2005. Without knowing the specific statements in the letter to the Warden that Officer Jones contended were false, Crittendon alleges that he could not prepare an adequate defense. Crittendon further alleges that Officer Borders showed bias during the July 28 disciplinary hearing because his finding of guilt was based on a lack of evidence. (Doc. Nos. 1, 2.)

An essential element of a complaint filed under § 1983 is that the conduct complained of deprived a plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527 (1981). While a violation of a state or federally-created liberty interest can amount to a violation of the Constitution, not every violation of state or federal law or state or federally-mandated procedures is a violation of the Constitution. *See Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982); *Brown v. Dodson,* 863 F.

Supp. 284 (W.D. Va. 1994).  Not every deviation from an agency's rules violates of the Constitution.  *Smith v. State of Georgia*, 684 F.2d 729 (11th Cir. 1982); *see also Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).  Proof of denial of due process arising out of administrative proceedings requires a showing of substantial prejudice which implicates fundamental fairness.  *Ka Fung Chan v. Immigration & Naturalization Service*,  634 F.2d 248 (5th Cir. 1981); *N.L.R.B. v. Webb Ford, Inc.*, 689 F.2d 733 (7th Cir. 1982).

Here,  Crittendon fails to demonstrate that he was substantially prejudiced by the proceedings about which he complains. Moreover, with the narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472 (1995), Crittendon's claims regarding prison officials' failure to follow prison regulations,  without more, simply does state a claim of constitutional magnitude. *Id*.; *see also, e.g., Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167, 1168 (5th  Cir. 1990); *Baker v. McCollan*, 433 U.S. 137, 146 (1979).

To the extent Crittendon  claims that Defendants denied him due process  with regard to  the manner in which his disciplinary proceedings were conducted and/or his assignment to segregation and the hot dorm, he does  not state a violation of his constitutional rights. As noted, the Supreme Court has held that prison regulations on confinement of inmates do not create a liberty interest enforceable in a § 1983 action. *Sandin,* 515 U.S. 472.  In *Sandin,* the

6

Court determined that the added restraint of prison discipline "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242 (1976), *quoted in Sandin,* 515 U.S. at 480.

The *Sandin* Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived

7

of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests) [footnote omitted]. In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him, or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivations imposed upon Crittendon as a result of disciplinary proceedings did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give

rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484. This court must, therefore, determine whether the actions about which Crittendon complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court recently noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the

ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the limited time in disciplinary segregation and the restricted privileges dormitory, "though concededly punitive, does not represent a dramatic departure from the basic conditions" of the sentence imposed upon Crittendon. *Id.* at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, Crittendon's theory of liability under the law as established in *Sandin* entitles him to no relief and Defendants are, therefore, entitled to summary judgment on this claim.

 *ii. Bias*

Crittendon claims that Officers Pryor and Borders exhibited bias based in their findings made during the July 14 and 28, 2005 disciplinary hearings. This allegation entitles him to no relief. An administrative hearing or reviewing officer is presumed to be unbiased. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Any alleged bias must be evident from the record and cannot be based on speculation or inference. *See Nash v. Auburn University*, 812 F.2d 655, 665 (11th Cir. 1987). For improper bias of a hearing or reviewing officer to be shown, the conduct of such officer must be so extreme that it deprived the hearing or appeal of the fairness and impartiality necessary to the fundamental fairness required by due process.

*N.L.R.B. v. Webb Ford, Inc.*, 689 F.2d 733 (7th Cir. 1982).

Here, Crittendon has not come forward with any evidence which establishes bias on the part of Officer Pryor with respect to his July 16, 2005 disciplinary hearing. The record of the disciplinary proceeding does not disclose extreme conduct which deprived the disciplinary proceeding of fundamental fairness; rather, the record establishes that Officer Pryor afforded Crittendon the requisite due process and based her findings solely on the evidence presented at the hearing. Additionally, Captain Sconyers, acting as the Warden's Designee, reviewed the disciplinary report generated from the July 16 hearing and found that the document had been correctly completed and properly served on Crittendon.[2] He also reviewed the testimony of Officer Jones and Crittendon, reviewed the list of questions prepared by Crittendon, observed that Crittendon had been found guilty of the charge against him, and noted the recommended sanction. Captain Sconyers concluded that the hearing had been adequately conducted and found no violation of Crittendon's due process rights. (Doc. No. 10, Exhs. 2, 3, 4.)

Similarly, Crittendon has failed to come forth with any evidence that establishes bias

---

[2]Crittendon alleges that he was served with notice of the July 14, 2005 disciplinary initiated by Officer Jones on July 15, 2005 at 11:45 a.m. rather than on July 14 at 10:36 a.m. as shown on the disciplinary report. Crittendon, therefore, alleges that he was not afforded 24 hours advance notice of the disciplinary hearing. Taking as true Crittendon's assertion as to when he was served with notice of the infraction, the court notes that Crittendon's own statement shows that he still had more than 24 hours advance notice of his disciplinary hearing which was held on July 16, 2005 at 11:45 p.m. (Doc. Nos. 1, 2 and Doc. No. 10, Exhs. 4, 5.)

on the part of Officer Borders in his administration of the July 28, 2005 disciplinary hearing. Officer Borders is a fifteen year veteran with Alabama Department of Corrections ["ALDOC"] and an experienced hearing officer. After hearing the testimony presented during the July 28 proceeding, he determined that Crittendon did make a false statement about Officer Jones in a letter written to Warden Mosley. He also found the letter written to Warden Mosley was slanderous and defamatory and contained false statements and that Crittendon's testimony at the hearing was not credible. Captain Sconyers, acting as the Warden's Designee, reviewed the disciplinary report and concluded that the hearing comported with all due process and procedural requirements. He further determined that the written charges against Crittendon were clear and that he easily should have understood the charges for purposes of preparing a defense. (Doc. No. 10, Exhs. 2, 3, 5.)

Again, the record of the disciplinary proceeding conducted July 28, 2005 fails to disclose extreme conduct which deprived the proceeding of due process. Based on the foregoing, the court finds that Crittendon is entitled to no relief on his bias claims and Defendants' motion for summary judgment is due to be granted.

  *iii. Retaliation*

Crittendon alleges that Officer Jones issued him the July 14, 2005 disciplinary in retaliation for his conduct in informing other inmates that she had had sexual relationships with his brothers. According to Crittendon, Officer Jones confronted him on July 12, 2005

about making such comments and informed him that "she was going to get [him] for it." (Doc. No. 2 at 3.) Crittendon further alleges that Officer Jones issued him the July 20, 2005 disciplinary infraction in retaliation for his conduct in writing a letter to Warden Mosley which discussed Officer Jones' actions in initiating the July 14, 2005 disciplinary. (Doc. Nos. 1, 2.)

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248-49 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Moreover, a prisoner must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Conclusory allegations of retaliation are insufficient. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

The court has discussed, *infra*, the evidence relating to the actions taken by Defendants with regard to the disciplinary infractions issued to Crittendon on July 14 and

July 20, 2005. The evidence presented reflects that Defendants have met their burden of articulating legitimate, non-retaliatory reasons for their actions taken against Crittendon. Crittendon has failed to come forward with any evidence showing that the proffered reasons for the adverse decisions or actions were a pretext for retaliation, and further, Crittendon fails to rebut Defendants' evidence that he was in fact convicted of the disciplinary violations that Officer Jones reported.[3] *See Earnest v. Courtney,* 64 F.3d 365, 367 (8th Cr. 995) (*per curiam*) (retaliation claim precluded if punishment was based on actual violation of prison rules); *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994) (prison disciplinary committee's finding that prisoner actually violated prison regulations "checkmate[d]" prisoner's retaliation claim). Because Crittendon has failed to set forth sufficient evidence that, but for the alleged unconstitutional, retaliatory motive, discipline would not have been imposed on him for violating Rule Numbers 38 and 41, Defendants' dispositive motion on Crittendon's claims of retaliation is due to be granted.

---

[3] In her affidavit submitted in support of Defendants' dispositive motion, Officer Jones states that on July 20, 2005 Officer Lamar Gibson, Jr. directed her to report to the Shift Commander's office where she was informed that Crittendon had sent a letter to Warden Mosley wherein he stated that Officer Jones had confronted him on July 12, 2005 on the front porch of Dorm 8 regarding rumors he was spreading about her and his brothers. Crittendon's letter further stated that Officer Jones had issued the July 14, 2005 disciplinary against him in retaliation for spreading these rumors. Officer Jones affirms that she informed Lt. Gibson that she had not been at work on July 12, 2005 and that on July 11, 2005 she was assigned to Dorm 9 Cubicle. Lt. Gibson then summoned Crittendon to the Shift Commander's Office and questioned him about the allegations contained in his letter to the Warden. Crittendon told Lt. Gibson that on July 12, 2005 Officer Jones had confronted him on Dorm 8 porch. Lt. Gibson informed Crittendon that Officer Jones had not been at work on the day he alleged she had confronted him. Lt. Gibson then instructed Officer Jones to charge Crittendon with a disciplinary notice for violation of Rule Number 41. (Doc. No. 10, Exh. 3.)

*B. The Religion Claim*

Crittendon alleges that while housed on segregation and the hot dorm he could not attend religious services. Crittendon fails to allege that this inadequacy, however, was not reasonably related to the prison's legitimate security interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Additionally, there is no indication much less allegation that while housed on Easterling's segregation unit Crittendon was not permitted to actually engage in any sort of daily or weekly religious observance, that he was not allowed to possess religious materials and to worship within his cell, and/or that his temporary inability to go to a specific location in order to engage in the worship of his religion unduly burdened his ability to engage in the practice of his religion. *See Id*. at 89-90; *McRoy v. Cook County Dept. of Corrections*, 366 F. Supp.2d 662. 675-676 (N.D. Ill. 2005) (holding that defendants' policy of canceling religious services during lockdowns and staff shortages satisfied the second prong of the *Turner* analysis where there was no allegation or argument that solitary prayer in inmate's cell or group prayer in dayroom were insufficient alternatives to the communal services for the exercise of inmate's faith). An inmate's free exercise right does not "depend upon his ability to pursue each and every aspect of the practice of his religion." *Canedy v. Boardman,* 91 F.3d 30, 33 (7th Cir. 1996); *see also Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) ("A special chapel or place of worship need not be provided for every faith regardless of size.").

15

In this case, there is nothing before the court to indicate that Crittendon's ability to practice his religion and engage in religious observance was unreasonably restricted. *See Employment Div. v. Smith,* 494 U.S. 872, 877 (1990); *Turner*, 482 U.S. 7; *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). The court, therefore, finds that he has failed to establish that Defendants prevented him from engaging in the practice his religion and their motion for summary judgment with respect to this claim should be granted.[4]

*C. The False Information Claim*

Crittendon contends that Officer Jones violated his First Amendment right to freedom of speech by charging him with a violation of Rule Number 41. Whether or not he was attempting to deceive Warden Mosley, Crittendon argues, was a matter left "to the Warden, Captain, or Commissioner." (Doc. No. 2 at 8.) Although couched as a violation of his First Amendment right to freedom of speech, the court understands Crittendon to argue that the basis for the decision to charge him with a violation of Rule Number 41 stemmed from false

---

[4]Crittendon cites to the "Religious and Restoration Act of 1993" in support of his claim that he should have been allowed to attend church services while confined to disciplinary segregation and the hot dorm. However, in *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Court held that the Religious Freedom Restoration Act ["RFRA"], 42 U.S.C. § 2000bb, *et seq.*, was unconstitutional as exceeding Congress' authority under the Constitution. The *Flores* decision required returning to the standard of review employed in *Employment Div., Dept. of Human Resources v. Smith*, 494 U.S. 872 (1990), and in the context of prison cases, *O'Lone v. Shabazz*, 482 U.S. 342. Following the Court's decision in *Flores*, Congress enacted the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000bb, *et seq.*, ["RLUIPA"]. Even if the court were to address Crittendon's claim under RLUIPA, it would fail because he has failed to show that Defendants substantially burdened his ability to engage in the free exercise of his religion for the reasons noted above. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 489 U.S. 136, 141 (1987).

accusations made by Officer Jones "because of what she believe[d] [Crittendon] told other inmates about her" on July 12, 2005.[5]  (*Id.*)

As previously determined from the evidentiary material before the court, the July 20, 2005 disciplinary charge against Crittendon arose from his conduct in writing a letter to Warden Mosley which contained slanderous, defamatory, and/or untrue statements. It is, therefore, clear that Defendants do not admit that the reason for instituting the July 20, 2005 disciplinary infraction, or that the information contained in the report, is false or baseless.

While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.1982). In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that erroneous information may exist in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Crittendon merely asserts that Officer Jones based her decision to charge him with a violation of Rule Number 41 on false and/or unsubstantiated information. This does not state a claim for relief and Defendants are, therefore, entitled to summary judgment on this claim.

---

[5] An inmate has no right under the First Amendment to make any and all statements he desires, verbal or written, with impunity. Furthermore, an inmate has no constitutional right to have disciplinary proceedings instituted against him by a specific prison official. *See Sandin*, 515 U.S. 472.

*D. The Access to Courts Claim*

Crittendon asserts that while housed in segregation and the hot dorm he could not freely go to the law library or conduct legal research. He admits, however, that the law library supervisor occasionally visits these areas to provide legal material and writing supplies. (Doc. Nos. 1, 2.)

Prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on *Bounds* and required that an inmate demonstrate the existence of an "actual injury" effecting his effort to pursue a nonfrivolous legal claim to demonstrate a denial of access to the courts. Moreover, *Lewis* emphasizes that a *Bounds* violation is related to the lack of capability to present claims. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When an inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because the capability of filing suit has not been provided, he demonstrates" the requisite injury. *Lewis*, 518 U.S. at 356.

Defendants maintain that all inmates on either segregation or assigned to the hot dorm are provided legal supplies and receive twice weekly visits by the law library clerks. At those

18

times, inmates in these units may check out legal references, forms, and supplies to assist them in their legal matters. (Doc. No. 10, Exhs. 2, .)

Here, Crittendon has failed to come forward with any evidence that the conduct or actions of Defendants deprived him of the *capability* of pursuing, or the *opportunity* of filing a non-frivolous legal in a federal or state court case. Crittendon fails to allege any specific facts showing that he suffered prejudice to any pending or contemplated direct appeals, habeas corpus applications, or non-frivolous civil rights claims. Consequently, there is nothing before the court which indicates that the actions about which Crittendon complains hindered his efforts to pursue non-frivolous legal claims and, therefore, he has failed to show the requisite injury. *Lewis*, 518 U.S. at 356. Because Plaintiff has failed to produce sufficient evidence to support this constitutional claim, the undersigned concludes that Defendants are entitled to summary judgment. *See Chandler v. Baird*, 926 F.2d 1057.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. No. 10), be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff; and

3. The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **July 30, 2007**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 16th day of July 2007.

    /s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE